# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| WENDELL THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 5:13-cv-02115-TMP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

**I.   Introduction**

The claimant, Wendell Thompson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Thompson timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Thompson was forty-four years old at the time of the Administrative Law Judge's ("ALJ") decision, and he has a ninth grade education. (Tr. at 16, 28, 214). His past relevant work experience includes employment as a short-order

cook. (Tr. at 28). Mr. Thompson claims that he became disabled on August 1, 2008, due to hypertension, chronic obstructive pulmonary disease (COPD), and asthma. (Tr. at 213).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. *Id.* If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's

impairments fall within this category, he will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; but, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Thompson has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 21). He further determined that, although Mr. Thompson began working at Ryan's Restaurant Group, Inc., in August of 2011, after the alleged onset period, his 2011 employment was an unsuccessful work attempt.[1] According to the ALJ, claimant's COPD, asthma, hypertension, depressive disorder, alcohol dependence, history of cocaine abuse (in early remission), borderline intellectual functioning, and learning disorder (reading and mathematics) are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22). The ALJ did not find Mr. Thompson's allegations to be totally credible, and he determined that Mr. Thompson has the residual functional capacity to perform "sedentary work as defined in 20 CFR § 416.967(a), except he can occasionally climb, balance, stoop, kneel, crouch and crawl. The claimant can occasionally tolerate exposure to pulmonary irritants, temperature extremes and humidity. He requires the opportunity to alternate between sitting and standing, as

---

[1] An unsuccessful work attempt occurs when, after working for a period of six months or less, the claimant is forced by his impairment to stop working, and there is a significant break in the continuity of the work before the beginning of the work attempt that later proved unsuccessful. (Tr. at 21).

needed. Additionally, the claimant can understand, remember and carry-out simple, repetitive, one-to-two step verbal directions; make judgments on simple work-related decisions; and adapt to gradual, infrequent workplace changes. He can have occasional, casual contact with the general public and infrequent contact with supervisors and coworkers." (Tr. at 24-25).

According to the ALJ, Mr. Thompson is unable to perform any of his past relevant work, he is a "younger individual," and he has a "limited education," as those terms are defined by the regulations. (Tr. at 28). He determined that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding of "not disabled" regardless of transferability of job skills. (*Id.*) The ALJ found that Mr. Thompson has the residual functional capacity to perform a range of sedentary work. (*Id.*) Even though the claimant cannot perform the full range of sedentary work, the ALJ used Medical-Vocational Rule 201.25 as a guideline, as well as the testimony of a vocational expert ("VE") for finding that there are a number of jobs in the economy that Mr. Thompson is capable of performing, such as cuff folder, buckle wire assembler, and lens inserter. (*Id.*) The ALJ concluded his findings by stating that the claimant "has not been under a disability, as defined in the Social Security Act, since April 22, 2010, the date the application was filed." (Tr. at 29).

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for

review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the claimant meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.  Discussion

Mr. Thompson alleges that the ALJ's decision should be reversed and remanded for two reasons.  First, Mr. Thompson argues that the Appeals Council failed to consider the new evidence he presented to it after the ALJ's determination.  Alternatively, Mr. Thompson argues that the Appeals Council erred in failing to remand Mr. Thompson's case for further consideration in light of new and material evidence.

After the ALJ's denial of Mr. Thompson's SSI petition, the claimant presented evidence that was new and material to his claim.  This evidence consists of a "Tracking Card" from Mr. Thompson's high school ("the new evidence"). (Tr. at 259-260).  The new evidence indicates that during his seventh grade year, Mr. Thompson was placed in Educable Mentally Retarded ("EMR") classes, and remained in those courses until he left Decatur High School in ninth grade.  (*Id.*) Mr. Thompson's EMR placement appears to be based on a WISC-R[2] test taken in 1979 by which he was determined to have an IQ of 70.  (*Id.*)  The claimant argues in his brief to the Appeals Council that the new evidence should be evaluated to "resolv[e] the differential diagnoses of BIF [borderline intellectual functioning] or Mild mental retardation as surmised by the consultative psychologist and to the

---

[2]  WISC-R is an acronym for the Wechsler Intelligence Scale for Children – Revised.  It is a test designed to measure a child's intellectual ability and intelligence quotient (IQ).

ultimate Residual Functional Capacity (RFC)." (Tr. at 257). The claimant further argues that the new evidence supports the finding of disability for Mr. Thompson based on listing 12.05(C), which requires a valid IQ score between 60 and 70 and an additional physical or mental impairment which imposes a significant limitation. (*Id.*)

The Appeals Council denied Mr. Thompson's request for review and stated in the denial that the Council "considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrate Law Judge's decision." (Tr. at 2). The Appeals Council Exhibit List included: 1) educational records from Decatur City Schools received on July 17, 2012; and 2) representative's brief dated August 17, 2012. (Tr. at 4).

The claimant argues in this appeal that the Appeals Council erred by failing to remand his claim for consideration in light of the new evidence. The claimant states that "[t]he school records submitted as evidence to the Appeals Council should have been evaluated by the Appeals Council as part of the entire record when submitted as new and material evidence relating to the period on or before the date of the ALJ decision." (Doc. 8, p. 7).

### A. The Appeals Council Did Consider the Newly Submitted Evidence.

Mr. Thompson's assertion that the Appeals Council failed to consider the new evidence may be addressed using the same analysis that was used in the recent Eleventh Circuit opinion, *Mitchell v. Commissioner, Social Security Administration*, 2014 WL 5803932 (11th Cir., November 10, 2014).  As in the instant case, the Appeals Council in *Mitchell* "denied [the claimant's] request for review, explaining that it had considered [his] reasons for disagreeing with the ALJ's decision as well as his additional evidence," and determined that the new evidence did not provide a basis for changing the ALJ's decision.  *Id*. at *3.  Also similarly to the instant case, the Appeals Council in *Mitchell* did not engage in a discussion of the new evidence.  *Id*.  The Eleventh Circuit held that "the Appeals Council is not required to explain its rationale when denying a request for review."  *Id*. at *11.  This court has no reason to second-guess the assertion by the Appeals Council that it considered the new evidence offered by Mr. Thompson.  Accordingly, the claimant's argument that the Appeals Council failed to consider the new evidence is without merit.

### B. The Appeals Council Erred in Failing to Either Review Mr. Thompson's Claim or Remand the Claim to the ALJ.

The claimant further argues that, in light of the new evidence, the ALJ's determination is not based on substantial evidence.  "[W]hen a claimant properly

presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007). The claimant's position is that Mr. Thompson's IQ score of 70 renders him eligible to meet listing 12.05(C), Mental Retardation. Listing 12.05 states, in relevant part:

> Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  The introductory material to the mental disorders listing clarifies that to meet the listing, an impairment must satisfy "the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria" listed in subsections A. through D.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (emphasis added).

"The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1261 (11th Cir. 2007), 20 C.F.R. § 404.900(b).  It has been established that the Appeals Council considered the new evidence and determined that it was not sufficient to render the ALJ's decision erroneous.  In the instant case, as in *Ingram*, the claimant argues that the Appeals Council erred by refusing to conclude that the ALJ's determination was contrary to the weight of the evidence, and should have granted review of his case.

Mr. Thompson asks this court to overturn or, in the alternative, remand his case to the Appeals Council for review.  This court "may review, under sentence four of section 405(g), a denial of review by the Appeals Council" and must consider whether Mr. Thompson's new evidence "renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.  The Eleventh Circuit's discussion in *Ingram* of the claim at issue and past circuit decisions provides a great deal of guidance concerning the evaluation of newly presented evidence.  In *Ingram*, the claimant requested review of the ALJ's decision by the Appeals Council and presented a new psychological evaluation in support of her request for review.

Similarly to the instant case, the claimant in *Ingram* argued that newly presented evidence rendered her eligible for assistance pursuant to listing 12.05(C). *Id*. at 1266. Also like the instant case, the Appeals Council considered the evidence and denied review. *Id*. at 1259.

The instant case is distinguishable from *Ingram* because the issue in *Ingram* was whether the district court erred in failing to evaluate the new evidence presented to the Appeals Council when determining whether the ALJ's decision was supported by substantial evidence. However, the Eleventh Circuit provides a helpful discussion in *Ingram* of other cases in which the Appeals Council considered new evidence but denied review.

> Nearly forty years ago, our predecessor circuit considered evidence first presented to the Appeals Council to determine that an application for benefits required further consideration by the Commissioner. In *Daniel v. Gardner*, the administrative law judge had been misled by an incorrectly transcribed date in a doctor's letter, and the doctor filed new evidence with the correct date in the Appeals Council. 390 F.2d 32 (5th Cir. 1968). The Appeals Council considered the evidence but denied review. *Id*. at 33. We faulted the Appeals Council for not correcting the administrative law judge because "[t]he Appeals Council . . . had the benefit of Dr. Lumpkin's subsequent report that appellant had been permanently and totally disabled since 1954[, and t]his and Dr. Kay's corroborating findings of appellant's disability in 1957 stood undisputed in the record before the Appeals Council." *Id*. Instead of ordering an award of benefits, we directed the district court to remand to the Commissioner to determine whether, in the light of the undisputed medical evidence, the claimant met the other qualifications to be eligible for disability benefits. *See id*. at 34.

> Sixteen years later, we again considered evidence first presented to the Appeals Council to determine that a claimant was entitled to an award of benefits. In *Bowen v. Heckler*, the claimant filed evidence in the Appeals Council, which considered the evidence but denied review. 748 F.2d 629 (11th Cir. 1984). We held that "the Appeals Council did not adequately evaluate the additional evidence" and, citing earlier precedents, reasoned that "[w]e have previously been unable to hold that the Secretary's findings were supported by substantial evidence under circumstances such as these." *Id*. at 634. In contrast with *Daniel*, we did not remand to the Commissioner. After quoting sentence four of section 405(g) in full and discussing it at length, we concluded that a reversal of the final decision of the Commissioner was appropriate. We held that "the Appeals Council should have awarded Bowen disability insurance benefits," and we remanded to the district court "for entry of an order . . . that such an award be made." *Id*. at 637.

*Ingram*, 496 F.3d at 1262-1263.

Accordingly, this court is tasked to consider whether the final decision of the Commissioner, based on the entire record including the new evidence, is supported by substantial evidence. The ALJ determined that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.09." (Tr. at 22). In making this determination, the ALJ "considered the opinions of consultative examiner John R. Haney, Ph.D., medical expert Rebecca Hansmann, Ph.D., and the State agency psychological consultant, Guendalina Ravello, Ph.D." (*Id*.)

Dr. Haney, whose opinion the ALJ gave "significant weight to the extent consistent with the residual functional capacity," opined that Mr. Thompson's "intelligence [is] at the borderline range *or below*," and diagnosed Mr. Thompson with a "learning disorder (consider borderline intellectual functioning *or mild mental retardation*)." (*Id.*) (emphasis added).  Dr. Hansmann, whose opinion also was given significant weight, diagnosed Mr. Thompson with borderline intellectual functioning.  The consulting examiners did not have the school records or IQ score when evaluating Mr. Thompson.  The consulting examiners also do not appear to have given Mr. Thompson an IQ test or factored an IQ score into their determination of his mental abilities.  (Tr. at 348-349).  Had any of the consulting examiners had access to the new evidence, it is possible that a diagnosis of mild mental retardation would have been found, prompting the ALJ to consider whether Mr. Thompson is eligible for benefits under listing 12.05.

The court recognizes that it can do no more than speculate as to what the consultative examiners and ALJ would have determined had they had the new evidence at the time of their determinations.  It is for that reason the Appeals Council's decision not to review or remand the claim is problematic.  The Appeals Council stated that the new evidence was not sufficient to overturn the decision of the ALJ.  However, the ALJ made no determination regarding the specific listing

now at issue (12.05). Without a decision by the ALJ regarding listing 12.05, there can be no determination of whether the ALJ's determination regarding that issue was based on substantial evidence. Mr. Thompson specifically asserts that, *in light of the new evidence*, he is eligible for benefits under listing 12.05(C). This argument was not evaluated or addressed by the ALJ, because the argument had not yet been made.

The ALJ did not discuss listing 12.05 in his determination, because evidence of Mr. Thompson's possible mental retardation had not yet been provided. Such evidence now has been presented. It is not within the province of this court to decide facts or weigh evidence. Accordingly, it is appropriate to require the Commissioner to determine, for the first time, whether Mr. Thompson is eligible for benefits pursuant to listing 12.05.

### IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Thompson's arguments, the Court finds that the case is due to be remanded to the Commissioner to determine whether, in light of the new evidence, Mr. Thompson meets the qualifications to be eligible for benefits. By separate Order, the court will

vacate the determination of the Commissioner and remand the matter for further evaluation in light of the new evidence offered to the Appeals Council.

DONE this 20th day of March, 2015.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE